985 F.2d 577
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Andrew Allen ZANE, Defendant-Appellant.
 No. 91-50164.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 5, 1993.
Decided Jan. 28, 1993.
 
 Appeal from the United States District Court for the Central District of California; No. CR-89-0959-WMB-1, William Matthew Byrne, Jr., District Judge, Presiding.
 C.D.Cal.
 AFFIRMED.
 Before JAMES R. BROWNING, POOLE and NOONAN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 I.
 
 2
 The evidence was sufficient to establish Zane's possession of the drugs. The cocaine was found on the side of the closet containing male clothing. See United States v. Terry, 911 F.2d 272, 278 (9th Cir.1990) (evidence sufficient to establish defendant's control over gun found on a shelf in a closet he shared with his wife where men's boots were on the shelf and men's clothes were stored in that side of the closet). Moreover, an undercover informant testified that while visiting Zane in his home, Zane retreived something from the closet. See Williams v. United States, 418 F.2d 159, 163 (9th Cir.1969) (evidence defendant selected clothes from a bedroom closet sufficient to establish his control over heroin found on closet shelf). Finally, Mrs. Zane's testimony that she was not aware there was any cocaine in the closet suggests it belonged to Zane.
 
 
 3
 Zane's control over the heroin found in a box on the bookcase could also be inferred from Mrs. Zane's testimony. When asked whether she kept heroin in the house, she mentioned only the heroin stored in the film cannister. Accordingly, the jury could infer the heroin found in the box on the bookcase did not belong to her. With respect to the heroin in the film cannister, Mrs. Zane testified she and her husband kept it for personal use.
 
 
 4
 The principal difficulty with Zane's theory that the drugs could have belonged to his wife is that he raises it for the first time on appeal. At trial, he argued the drugs belonged not to his wife but to Kontopides, the government informant. As between Kontopides and Zane, the evidence was plainly sufficient for the jury to infer the drugs belonged to Zane. The drugs were found in Zane's home along with paraphernalia associated with drug dealing, including electronic scales and a gun. See United States v. Castillo, 866 F.2d 1071, 1088 (9th Cir.1989) (presence of gun beneath defendant's mattress supported the "inference that he was prepared to defend his possession of the money and narcotics in the bedroom").
 
 II.
 
 5
 We reject the claim that the police deliberately elicited incriminating statements from Zane in violation of his right to counsel. His right to counsel had not attached. He had not been indicted or arraigned on the present charges, and the charges in the earlier New Mexico indictment are not so "inextricably intertwined" with the charges in this case that Zane's right to counsel on the New Mexico charge "cannot constitutionally be isolated" from his right to counsel on the charges in this case. United States v. Hines, 963 F.2d 255, 257 (9th Cir.1992).
 
 
 6
 The charges were related only in the sense that both indictments arose out of Zane's continuous course of illicit drug trafficking. The indictments plainly charged separate offenses; the crimes were different, involved different people and occurred at different times. See Hines, 963 F.2d at 257 (two charges for unregistered possession of a firearm were separate crimes where "the place, time, and persons involved were all different"). One indictment charged Zane, his wife and a third individual with conspiracy to possess cocaine; the other charged only Zane with possession of cocaine and heroin. The conspiracy was alleged to have occurred between November 1, 1988 and April 5, 1989; Zane was alleged to have possessed cocaine and heroin in California on September 12, 1989, five months after conspiracy had ended.
 
 
 7
 The district court did not err in denying further hearings on the relationship between the two investigations. Neither cooperation between officials investigating separate crimes nor even the fact that both charges arose from the same investigation require a finding that the charges are inextricably-intertwined. See Hendricks v. Vasquez, No. 91-16631, Slip. op. 12915, 12922-25 (9th Cir. October 29, 1992) (right to counsel had not attached on murder charges where San Francisco police investigating murder charge flew to Dallas where defendant had been arrested and arraigned on unlawful flight from murder charges and brought defendant to San Francisco where they questioned him about the murder charges). See Hines, 963 F.2d at 257; United States v. Nocella, 849 F.2d 33, 37-38 (1st Cir.1988) (right to counsel had not attached on federal charges for conspiracy to distribute cocaine even though pending state charges for possession of marijuana arose out of the same investigation by a joint state-federal task force); see also United States v. Carpenter, 963 F.2d 736, 739-41 (5th Cir.1992) (state burglary and federal gun possession charges were not inextricably intertwined even though weapon, which gave rise to federal gun possession charge, was the same gun used in the burglary and was found on defendant when police executed arrest warrant on the pending state charges).
 
 
 8
 United States v. Martinez, 972 F.2d 1100 (9th Cir.1992), is not to the contrary. In Martinez, the charges arose out of the same offense and therefore were indisputably inextricably intertwined. The only question was whether the right to counsel on the earlier state charges had been extinguished when those charges were dismissed. We remanded for findings as to whether the state and federal law enforcement officers had dropped the state charges in a collusive effort to circumvent Martinez's right to counsel. Id. at 1105.
 
 III.
 A.
 
 9
 Zane's Speedy Trial Act claims are without merit. The court's finding that the continuance of 34 days from August 21 through September 23, 1990 was necessary to ensure continuity of counsel and to allow adequate time for preparation satisfied the requirement that an "ends of justice continuance" be supported by specific factual circumstances justifying the continuance. This finding was adequately supported by defense counsel's representations that defendant's new attorney was currently involved in two other trials and would need time to familiarize himself with the case.
 
 
 10
 The cases Zane cites do not support his claim that the court should have inquired further as to the circumstances of the new attorney's unavailability. See United States v. Aviles-Alvarez, 868 F.2d 1108 (9th Cir.1989); United States v. Perez-Reveles, 715 F.2d 1348 (9th Cir.1982). The district court made no reference to either the Speedy Trial Act or the ends of justice in granting the continuance in either case. Aviles-Alvarez, 868 F.2d at 1112; Perez-Reveles, 715 F.2d at 1352. Here, by contrast, the requirements of the Speedy Trial Act were specifically cited when the findings were made and the continuance granted.
 
 
 11
 Furthermore, the continuance was granted at the defendant's request, and the United States Attorney expressly conditioned his consent on defense counsel's representation that the time would be excludable as an ends of justice continuance. "Where a defendant's own actions contribute to the need for an 'ends of justice' continuance under the STA the defendant cannot complain that a continuance violates his or her speedy trial rights." United States v. Lewis, No. 91-10280, Slip. op. at 13597, 13613-14 (9th Cir. Nov. 23, 1992) (need for continuance was partially caused by defendant's "seeming good faith participation in plea negotiations" and his provision of "stilted and unnatural" handwriting exemplars); see also United States v. Studnicka, 777 F.2d 652, 658 (11th Cir.1985) ("The Speedy Trial Act was not enacted to allow a defendant to string the court along by delaying in retaining counsel and then use the Act as a sword to dismiss a proper indictment, rather than as a shield to protect against unnecessary and unfair delays.").[1]
 
 B.
 
 12
 The record does not support Zane's claim that the district court failed to make findings justifying the exclusion of time from September 24 through October 1, 1989. The district court had previously made those findings on August 20th when the court continued the trial to October 2, 1989 at defendant's request. While a status conference was held on September 24, 1989 because the United States Attorney sought a continuance of the October 2nd trial date, there was no need to make further findings regarding the continuance from September 24 to October 2nd.
 
 
 13
 Since these exclusions bring Zane's trial within the seventy-day limit, we need not address Zane's challenges to other rulings by the district court regarding excludable time.
 
 IV.
 
 14
 There is no merit in Zane's contention that the district court, in sentencing him as a career offender, failed to conduct a hearing to determine whether his three prior convictions were based upon knowing and voluntary guilty pleas.
 
 
 15
 With respect to two of the three convictions, transcripts of the underlying guilty pleas document Zane's express waiver of each of his rights. Because the existence of two prior convictions was sufficient to sentence Zane as a career offender, we need not address the question of the voluntariness of the third conviction, which was evidenced only by a court minute order reporting that Zane plead guilty and was represented by counsel.
 
 
 16
 Furthermore, Zane was given an opportunity to, and did, present evidence regarding his claims that he was under the influence of narcotics at the time of his September 12, 1984 plea, and that his January 30, 1987 plea was coerced because the prosecutor pressured him into pleading guilty. The record supports the district court's finding that Zane failed to meet his burden of demonstrating these pleas were involuntary, and Zane did not offer additional evidence nor seek a further hearing on these issues.[2]
 
 
 17
 The state court judge's failure to ask whether Zane was under the influence of narcotics at the time of the plea is no basis for finding that the prior convictions were constitutionally invalid. United States v. Stewart, 977 F.2d 81, 84 (3d Cir.1992) ("Although the practice in federal courts, generally, is to inquire about drug ingestion, in the absence of any notice to the court, there is no constitutional obligation on the states to make such an inquiry.").
 
 
 18
 Nor is there merit to Zane's claim that his September 12, 1984 plea was invalid because the court failed to advise him that possession was an essential element of the crime of possession of cocaine for sale. A court need not advise a defendant of every element of an offense, rather "it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit." Henderson v. Morgan, 426 U.S. 637, 647 (1976); United States v. Bigman, 906 F.2d 392, 395 (9th Cir.1990).
 
 
 19
 In determining whether the defendant understood the elements of the crime, the defendant's experience in the criminal justice system and the nature of the particular element at issue are relevant factors. Marshall v. Lonberger, 459 U.S. 422, 437 (1983); United States v. Newman, 912 F.2d 1119, 1124 (9th Cir.1990). Zane was plainly a recidivist who understood the subtleties of the criminal justice system, and the name of the offense itself put Zane on notice that possession was an element of the crime.
 
 
 20
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 While Zane was not present at the hearing in which his attorney agreed to the excludable time, Zane specifically represented at the previous appearance that he did not wish to be present at the next status conference because it would simply involve scheduling in relation to his retention of another attorney
 
 
 [2]
 Letters indicating Zane was previously treated for drug overdoses cast little light on the question of whether he was under the influence of narcotics when he pled guilty. The letters indicate Zane was hospitalized in March 1984, long before he pled guilty on September 12, 1984. Zane offered only his own declaration and the transcript of the guilty plea in support of his claim that the prosecutor pressured him into pleading guilty on January 30, 1987 by threatening to seek a custodial sentence in his mother's case. During the plea hearing, the judge asked Zane: "[Has a]nybody threatened you or anyone close to you in order to get you to enter this plea?" Zane responded: "You could say I've been pressured, but, no, sir." After this response, the judge again asked Zane if he had been pressured and Zane responded "no." The judge then asked if Zane was giving this plea freely and voluntarily and whether he was pleading guilty because he believed it was in his best interest to do so. Zane responded "yes" to both questions