**UNITED STATES of America, Appellee,**

v.

**Ronald GELZER, Robert L. Gelzer and Leon D. Griffin, Defendants–Appellants.**

**Nos. 459, 768 and 475, Dockets 94–1089 to 94–1091.**

United States Court of Appeals, Second Circuit.

Argued Nov. 23, 1994.

Decided March 23, 1995.

Edward P. Jenks, Mineola, NY, for defendant-appellant Ronald Gelzer.

Donald D. DuBoulay, New York City, for defendant-appellant Robert L. Gelzer.

Richard L. Herzfeld, New York City, for defendant-appellant Leon Griffin.

Douglas T. Burns, Asst. U.S. Atty., Brooklyn, NY (Zachary W. Carter, U.S. Atty., E.D.N.Y. and Susan Corkery, Asst. U.S. Atty., of counsel), for appellee.

Before JACOBS, CALABRESI, and PARKER, Circuit Judges.

JACOBS, Circuit Judge:

Village police officers noticed two men exit the Lynbrook, New York Post Office with six large canvas bags and enter a waiting car. The police followed the car and arrested the three occupants after a high-speed chase. Later, police retrieved a firearm from a spot at which the fleeing vehicle swerved during the pursuit. A jury convicted all three defendants on each of the five counts of the indictment: (1) conspiracy to commit armed postal robbery, in violation of 18 U.S.C. § 371; (2) armed postal robbery, in violation of 18 U.S.C. § 2114; (3) using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1); (4) possession of a firearm by a person previously convicted of a felony, in violation of 18 U.S.C. § 922(g)(1); and (5) possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. § 922(k). We address virtually all of the challenges to various pretrial, evidentiary and sentencing rulings, in particular the appropriateness of grouping closely-related counts for purposes of sentencing under Section 3D1.2 of the Guidelines.

Specifically, all three defendants contend on appeal that the district court erred by: (1) admitting circumstantial evidence establish-

ing defendant Robert Gelzer's connection to the firearm used in the robbery, and (2) refusing to group Count Two (armed postal robbery) with Counts Four and Five (the "firearms counts") pursuant to § 3D1.2 of the Sentencing Guidelines. In addition, defendant Ronald Gelzer challenges the admission of a post-arrest statement made prior to being read his *Miranda* rights. Robert Gelzer contends: (1) that there was insufficient evidence to convict him of the firearms counts; (2) that the government failed to establish a chain of custody for the firearm sufficient to support Count Three (§ 924(c)), and that the district court improperly commented on the insistence by the defense that the prosecution do so; (3) that the district court erred in refusing to grant a severance for Count Four (§ 922(g)); and (4) that he was erroneously classified as a career offender. Defendant Leon Griffin joins Robert Gelzer in challenging the failure to sever the felon-in-possession of a firearm count and the chain of custody issues and raises assorted complaints regarding alleged prosecutorial misconduct and evidentiary rulings of the district court.

We affirm the judgments of conviction in all respects except with regard to the grouping of closely-related counts, as to which we vacate and remand for resentencing.

## I. Background

At approximately 6:00 p.m. on December 31, 1992, two men wearing dark clothing and black ski masks approached two United States Postal Service employees as they were loading six bags of registered mail onto a truck parked at the loading dock of the Lynbrook Post Office. One of the two masked men was carrying a handgun. The two entered the back of the postal truck, pushed the postal employees to the floor and threatened to kill them. After grabbing six bags of registered mail, the two exited the postal truck and headed for a car parked in a lot adjacent to the Post Office.

At that moment, two Lynbrook Village police officers, Detectives James Dillon and James Curtis, were on routine patrol in an unmarked car. The police officers observed two men exit the rear of the Post Office carrying canvas bags, and head to a blue Acura which had been idling in the adjacent parking lot. Suspicious, the detectives followed the Acura. After the vehicle made a prohibited right turn on red, the police officers ordered the car to pull over. As Dillon approached the car on foot, the Acura sped away. During the ensuing chase, the speeding Acura swerved to the curb at the intersection of Picadilly Downs and Scranton Avenue, and continued on until it collided with two vehicles. Three individuals fled from the wreck. Dillon pursued and apprehended Robert Gelzer. Robert's brother, Ronald Gelzer, was pursued by Curtis and was apprehended clutching a black ski mask. Two off-duty New York City Transit Police Officers apprehended Leon Griffin.

The Lynbrook Police searched the blue Acura and found six grey canvas U.S. registered mail bags containing approximately $60,000, and one black ski mask. At the intersection of Picadilly Downs and Scranton Avenue, where the Acura had swerved to the curb during the chase, police recovered a .38 caliber Smith & Wesson revolver bearing a defaced serial number.

On May 19, 1993, Magistrate Judge Michael L. Orenstein conducted a suppression hearing regarding a post-arrest statement made by Ronald Gelzer prior to the reading of his *Miranda* rights. While transporting Ronald Gelzer to the police station, Detective Fred Fusswinkle commented on the disruption of plans for New Year's Eve. Without further stimulus, Ronald Gelzer stated: "We're amateurs, not professionals." The magistrate judge denied the motion to suppress this statement, finding that, although it was made before Gelzer was advised of his *Miranda* rights, Detective Fusswinkle's comments about New Year's Eve were not "intended or likely to elicit an incriminating response from Mr. [Ronald] Gelzer." The district court ratified the magistrate judge's ruling.

At trial, the prosecution employed a long chain of circumstantial evidence to connect Robert Gelzer with the recovered firearm. The government maintained that the gun was tossed from the Acura when it veered to the curb at Scranton and Picadilly. The revolver

was registered to the owner of Aztec Jewelers located in Atlanta, Georgia, and had been stolen during a 1992 armed robbery nearly six months earlier. The owner of Aztec Jewelers testified about the details of the 1992 robbery and the stolen firearm, but was unable to identify any of the perpetrators. Next, the government called an Atlanta detective who testified that he had executed a search warrant at an apartment previously occupied by Robert Gelzer. At the apartment, the detective recovered property stolen from Aztec Jewelers, but did not find the .38 Smith & Wesson taken in the robbery. Based on this evidence, the government argued that Robert Gelzer had acquired the firearm in Atlanta, transported it to New York, used it in the Lynbrook robbery and discarded it during the getaway.

## II. Discussion

Between them, the defendants raise numerous arguments on appeal. We find no merit in any of them except the claim that the district court failed to group various counts properly for purposes of sentencing. We address that issue last.

### *Pre–Trial Issues*

### A. Admissibility of the Post–Arrest Statement

Ronald Gelzer argues that the district court erred in authorizing the admission of a post-arrest statement made prior to his receiving a *Miranda* warning. While en route to the Lynbrook Police station in a squad car, Ronald Gelzer declared, "We're amateurs, not professionals." He contends that this statement was made during custodial interrogation and is therefore inadmissible.

■ Statements made during custodial interrogation are generally inadmissible unless a suspect has first been advised of his rights. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). The act of interrogation encompasses "express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 300–01, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980). The standard for determining the admissibility of statements made by suspects prior to the issuance of a *Miranda*

warning is whether the words or actions of the law enforcement agents "were reasonably likely to elicit an incriminating response." *Id.* 384 U.S. at 302, 100 S.Ct. at 1690.

■ Ronald Gelzer's statement was not elicited by custodial interrogation. While transporting Ronald Gelzer to the Lynbrook Police station, Detectives Fusswinkle and DeSilva discussed between themselves the probability that the arrest and resulting paperwork would jeopardize their respective plans for New Year's Eve. The only question directed at Ronald Gelzer was an inquiry as to what Gelzer's New Year's plans had been. Neither the topic of this sociable question nor the general tenor of discussion created an atmosphere that was "reasonably likely to elicit an incriminating response." *Id.* Ronald Gelzer's claim of amateur status was volunteered, was not the product of interrogation, and was therefore admissible.

### B. Pleading of Count Three (18 U.S.C. § 924(c))

■ Robert Gelzer and Leon Griffin argue that Count Three of the indictment—charging them with using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)—failed to plead the requisite mens rea. At the time appellants raised this argument, the Second Circuit had not addressed the sufficiency of an indictment that tracks the language of § 924(c) and thereby does not explicitly allege scienter. In *United States v. Santeramo*, 45 F.3d 622 (2d Cir. Jan. 10, 1995) (*per curiam*), issued subsequent to oral argument, we held that, while knowledge of the use of the firearm is an essential element of the offense, scienter need not be expressly alleged. *Id.* at 624. Where, as here, the indictment closely tracks the language of the statute, a criminal defendant is sufficiently apprised of the charges to allow preparation of a defense. *Id.*

### C. Severance of Count Four (§ 922(g))

Leon Griffin and Robert Gelzer challenge the district court's denial of their motion to sever or bifurcate Count Four of the indictment, which charges possession of a firearm

by a person previously convicted of a felony, in violation of 18 U.S.C. § 922(g)(1).

 Rule 12(b)(5) of the Federal Rules of Criminal Procedure mandates that requests for severance of charges under Rule 14 be made prior to trial. Fed.R.Crim.P. 12(b)(5). The failure to raise a claim of improper joinder before trial results in a waiver of that issue on appeal. Fed. R.Crim.P. 12(f); *see also United States v. Graves,* 736 F.2d 850, 854 (2d Cir.1984). Since counsel for Griffin conceded that his severance motion was untimely when he made it and advanced no reason for failing to bring the motion before trial, the district court properly denied it. Furthermore, even if Griffin had made a timely motion to sever Count Four of the indictment, we find no prejudice in the joinder. *See United States v. Blakney,* 941 F.2d 114, 116 (2d Cir.1991). The evidence supporting the convictions of both Leon Griffin and Robert Gelzer was overwhelming. In addition, the risk of prejudice was mitigated because the prior felony conviction was introduced by stipulation. *See, e.g., United States v. Gilliam,* 994 F.2d 97, 100–03 (2d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 335, 126 L.Ed.2d 280 (1993).

### *Evidentiary Issues*

### D. Admissibility of Evidence Concerning the 1992 Aztec Jewelers Robbery

All three defendants claim that the district court erred in admitting circumstantial evidence concerning the unrelated and uncharged 1992 robbery of the Aztec jewelry store in Atlanta, evidence offered to connect Robert Gelzer to the .38 caliber Smith & Wesson allegedly discarded during the car chase. Robert Gelzer argues that the evidence was irrelevant, prejudicial and inadmissible "other crime" evidence. Ronald Gelzer and Leon Griffin argue that the evidence of the 1992 Atlanta robbery (as to which there is no suggestion of involvement by them) was highly prejudicial. Consequently, Ronald Gelzer and Griffin assert that the district court should have either excluded the evidence or granted them a severance.

 Robert Gelzer first claims that the evidence of the 1992 Atlanta robbery is inadmissible under Federal Rule of Evidence 404(b) as "other crime" evidence. Rule 404(b) does not bar all "other crime" evidence; it bars only the admission of "a defendant's uncharged crimes to prove propensity to commit the crime charged." *United States v. Concepcion,* 983 F.2d 369, 392 (2d Cir.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 163, 126 L.Ed.2d 124 (1993); Fed. R.Evid. 404(b). Here, the evidence of the 1992 Atlanta robbery was admitted in order to establish the ownership of a defaced firearm recovered during the crime presently charged. *See, e.g., United States v. Towne,* 870 F.2d 880, 888 (2d Cir.), *cert. denied,* 490 U.S. 1101, 109 S.Ct. 2456, 104 L.Ed.2d 1010 (1989); *see also United States v. Mendel,* 746 F.2d 155, 167 (2d Cir.1984) ("Proof of the connection of an exhibit to the defendants may be made by circumstantial evidence."), *cert. denied,* 469 U.S. 1213, 105 S.Ct. 1184, 84 L.Ed.2d 331 (1985). The government therefore had a proper purpose in introducing the "other crime" evidence. *See United States v. Gilan,* 967 F.2d 776, 780 (2d Cir.1992).

 Robert Gelzer next contends that the evidence was inadmissible under Rule 403 because its highly inflammatory and prejudicial nature substantially outweighed its probative value. Fed.R.Evid. 403. Generally speaking, any proof highly probative of guilt is prejudicial to the interests of that defendant. The prejudice that Rule 403 is concerned with involves "some adverse effect ... beyond tending to prove the fact or issue that justified its admission into evidence." *United States v. Figueroa,* 618 F.2d 934, 943 (2d Cir.1980). In these cases, Rule 403 mandates that the district court balance the probative value of evidence and its potential prejudicial effect. The determination of the district court is reviewed for an abuse of discretion. *United States v. Diaz,* 878 F.2d 608, 615 (2d Cir.), *cert. denied,* 493 U.S. 993, 110 S.Ct. 543, 107 L.Ed.2d 540 (1989).

 Evidence of the 1992 Atlanta robbery has substantial probative value: it links Robert Gelzer to the revolver used in the Lynbrook Post Office robbery by demonstrating that he had access to it; and it is a

necessary step in the chain of possession of the recovered firearm. No doubt, some of this evidence was potentially inflammatory, but Chief Judge Platt instructed the jury carefully and repeatedly on the limited purpose for which the evidence was introduced. We are also reassured by the fact that the prosecution did not set out to elicit gratuitous testimony calculated to suggest that Robert Gelzer or any of the other defendants were among the perpetrators in the 1992 Atlanta robbery, nor did the prosecution promote that idea to the jury. The Atlanta jeweler responded to clinical questioning by the prosecution with a description of the 1992 armed robbery that was somewhat overwrought. He volunteered that the robbers put a gun to his head and that they were black. Aside from these lapses, which are not traceable to the prosecution by anything the record shows, the most that was suggested by the testimony and commented on during summation was that Robert Gelzer "had something to do with the theft" of the revolver; that was also the minimum required to achieve the legitimate probative ends of this evidence. It is clear that the district court did not abuse its discretion in deciding to admit the evidence of the 1992 robbery against Robert Gelzer and was careful to mitigate its potentially prejudicial effect. *See Figueroa*, 618 F.2d at 943.

■■■■ Ronald Gelzer and Leon Griffin contend that the district court erred in failing either to sever their trial from that of Robert Gelzer or to rule that the circumstantial evidence of the Atlanta robbery was inadmissible as to them because of its inflammatory nature and prejudicial effect. Because the defendants failed to request a severance prior to trial, they have waived that issue on appeal. *See* Fed.R.Crim.P. 12(f). Nevertheless, the defendants claim that the fact of joinder (even if waived) rendered this evidence deeply prejudicial to them, and that the district court failed to give such prejudice adequate weight in the Rule 403 balancing. Where allegedly prejudicial evidence is admitted solely against one defendant in a multi-defendant trial, the prejudice this might cause to his co-defendants is an appropriate consideration for Rule 403 balancing and may result in the exclusion of such evidence in the

joint trial. *See Figueroa*, 618 F.2d at 944–46. This is so even where the co-defendants failed to request a severance. *Id.*

■■■■ Ronald Gelzer and Leon Griffin argue that, because the evidence of the 1992 Atlanta robbery concerned only Robert Gelzer, it was deficient in probative value as to them. However, this evidence was highly probative as to all three co-defendants. The evidence connected Robert Gelzer to the recovered revolver, and in so doing *also* connected the revolver to the Lynbrook heist. Therefore, the evidence establishing the lengthy chain of custody for the revolver was probative of the fact that the revolver was used in the Lynbrook robbery, a necessary element of Counts Two through Five as charged against all three defendants. Furthermore, any risk of prejudice was mitigated by the fact that the evidence did not suggest that Ronald Gelzer or Leon Griffin were among the robbers of Aztec Jewelers. Lastly, Chief Judge Platt was careful to caution the jury—on more than five occasions— on the limited purpose for which this evidence was being admitted as to all the defendants. *Cf. id.* at 944 (noting that cautionary instruction only as to the defendant against whom the "other crimes" evidence was admitted was possibly insufficient to cure prejudice to co-defendants). Therefore, we conclude that the district court properly ruled the circumstantial evidence of the 1992 Atlanta robbery was admissible.

### E. Chain of Custody of Recovered Firearm

Robert Gelzer argues that the district court committed reversible error by admitting the firearm into evidence without testimony establishing each link of the extended chain of custody. In addition, both Robert Gelzer and Griffin assert that the trial judge denied them a fair trial by improperly commenting to the jury on the defendants' decision to put the prosecution to its proof on that issue.

■■■■ The chain of custody is ordinarily a method of authentication for physical evidence. Under Federal Rule of Evidence 901, authentication seeks to establish that the evi-

dence offered is what its proponent claims it to be, and must be shown by a preponderance of the evidence. Fed.R.Evid. 901(a). A break in the chain of custody does not necessarily result in the exclusion of the physical evidence. *See United States v. Grant,* 967 F.2d 81, 83 (2d Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 1293, 122 L.Ed.2d 684 (1993). Rather, the principal function of authentication testimony is to " 'convince the court that it is improbable that the original item ha[s] been exchanged with another or otherwise tampered with.' " *Id.* (quoting *United States v. Howard–Arias,* 679 F.2d 363, 366 (4th Cir.), *cert. denied,* 459 U.S. 874, 103 S.Ct. 165, 74 L.Ed.2d 136 (1982)). Evidentiary rulings by a trial court ordinarily will not be overturned absent an abuse of discretion. *See Healey v. Chelsea Resources, Ltd.,* 947 F.2d 611, 620 (2d Cir.1991).

 The government concedes that there was not a "full" chain of custody established for the revolver alleged to have been used during the robberies and to have been discarded during the car chase. At trial, Officer Staub testified that he found the revolver on Scranton Avenue near the intersection of Picadilly Downs and gave it to Officer Curtis. Next, Postal Inspector Morrison testified that he received the revolver from Detective Curtis and sent it to Washington, D.C., for forensic testing. Appellants assert that the prosecution's failure to call Curtis as a witness to testify as to his tenure of the gun is a break in the chain sufficient to call into question the authenticity of the gun. We disagree. There was sufficient evidence to establish that it is more likely than not that the revolver offered at trial was the same as that recovered by Officer Staub. In addition, Chief Judge Platt subsequently ruled that any objection based on the chain of custody was waived when defense counsel failed to challenge the introduction into evidence of the revolver and the ballistics report. Chief Judge Platt did not abuse his discretion either in admitting the revolver into evidence or ruling that counsel had waived its chain of custody objection.

 Next, Griffin and Robert Gelzer contend that they were denied a fair trial when the trial judge improperly commented on the defense's objection to the admissibility of the revolver on chain of custody grounds. After Griffin's counsel, Ms. Chavis, initially objected to the admission of the revolver, Chief Judge Platt made the following comments:

> Ladies and gentlemen, it will be necessary for the government to locate and produce all the witnesses in the chain of custody and we'll take the gun subject to that production.

> \* \* \* \* \* \*

> [After a brief side-bar] Ms. Chavis says that she is going to insist on the government's production [of] an additional six or seven or so witnesses to establish a chain of custody with respect to this gun which means that this case will have to go over until next week before it is complete, but she is entitled to raise that question, if she wishes, as she has.

The government characterizes the court's statement as a neutral, non-prejudicial scheduling bulletin for the convenience of the jury. We disagree. Such comments are ill-advised and run the distinct risk of jury prejudice. Once the court has issued an evidentiary ruling that will likely entail an adjournment or lengthening of the trial, no useful purpose is served by telling the jury which party is responsible for the delay. Nor is the risk of prejudice mitigated simply by acknowledging the party's entitlement to the course of proceeding, when it may be seen as a waste of time.

 In this case, however, the defense suffered no prejudice by these gratuitous comments. First, the predicted delay never came to pass. After these comments, Chief Judge Platt ruled that the defense had waived its objection to the chain of custody by failing to contest the admission of either the revolver or the ballistics report. Consequently, no additional witnesses—Curtis or anyone who came into custody of the revolver in Washington—were called to testify. Defendants have failed to establish that the court's comments were so prejudicial as to deny them a fair trial, as opposed to a perfect one. *See United States v. Robinson,* 635 F.2d 981, 984 (2d Cir.1980), *cert. denied,* 451 U.S. 992, 101 S.Ct. 2333, 68 L.Ed.2d 852

(1981). After reviewing the entire record, we are unable to conclude that this isolated comment "so impressed the jury with the trial judge's partiality to the prosecution that this became a factor in determining the defendant[s'] guilt." *United States v. Pisani*, 773 F.2d 397, 402 (2d Cir.1985); *see also United States v. Guglielmini*, 384 F.2d 602, 605 (2d Cir.1967).

### F. Sufficiency of Evidence on the Firearms Counts

Robert Gelzer contends that the evidence presented at trial was insufficient to establish that either he or his co-defendants used or possessed a firearm in connection with the Lynbrook Post Office robbery. Consequently, Robert Gelzer argues that Counts Two through Five of the indictment should be dismissed.

 A criminal defendant challenging the sufficiency of the evidence to support his conviction takes on a heavy burden. *See United States v. Thai*, 29 F.3d 785, 816 (2d Cir.), *cert. denied*, ––– U.S. –––, 115 S.Ct. 456, 130 L.Ed.2d 364 (1994). An appellate court must view all of the evidence, whether direct or circumstantial, in the light most favorable to the government and must credit all inferences and credibility assessments that the jury might have drawn in favor of the government. *See id.* at 816–17; *United States v. Gordon*, 987 F.2d 902, 906 (2d Cir. 1993). We must affirm the conviction so long as the jury might fairly have concluded, from the inferences reasonably drawn from the record as a whole, that the defendant was guilty beyond a reasonable doubt. *See Thai*, 29 F.3d at 817; *United States v. Skowronski*, 968 F.2d 242, 247 (2d Cir.1992); *United States v. Sumnicht*, 823 F.2d 13, 15 (2d Cir. 1987).

 The government presented ample circumstantial evidence that Robert Gelzer used and possessed a firearm during the Lynbrook Post Office robbery. A postal employee present during the robbery testified that he saw one of the perpetrators with a gun. The pursuing police testified that the getaway car slowed down and swerved to the curb at the intersection of Scranton Avenue and Picadilly Downs. It is reasonable to infer that the firearm recovered from that spot had been discarded during the chase. Further evidence demonstrated that the discarded revolver was stolen during a robbery of Aztec Jewelers in Atlanta, Georgia nearly six months earlier, that Robert Gelzer lived in Atlanta at the time of the Aztec robbery, and that proceeds from that robbery (but not the gun) were recovered from his Atlanta apartment. It is reasonable to infer from the foregoing evidence that Robert Gelzer acquired the .38 Smith & Wesson in Atlanta, brought it to New York, used it in the Lynbrook robbery and threw it out of the getaway car. Viewing all the evidence in the light most favorable to the government and drawing all reasonable inferences in its favor, we conclude that there was ample evidence to support Counts Two through Five of the indictment.

### *Sentencing Issues*

### G. Classification as a Career Offender

Robert Gelzer contends that the district court erred in treating him as a career offender pursuant to § 4B1.1 of the United States Sentencing Guidelines, which provides in relevant part that a career offender is one who "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1. The two prior felony convictions must be unrelated. U.S.S.G. § 4B1.2(3). Prior sentences are deemed related if "they resulted from offenses that (1) occurred on the same occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing." U.S.S.G. § 4A1.2, Application Note 3. Robert Gelzer claims that his two prior felony convictions were related because they were consolidated for sentencing purposes or, alternatively, were part of a common scheme or plan.

 On September 24, 1982, Robert Gelzer pleaded guilty to two felony counts of attempted robbery: the first robbery occurred on January 8, 1982 and the second on March 4, 1982. He first argues that the two offenses were "consolidated for ... sentencing," within the meaning of § 4A1.2, because he received concurrent sentences in a single

sentencing proceeding. We have previously held that cases are not deemed consolidated simply because the defendant received concurrent sentences even when the concurrent sentences are imposed on the same day. *United States v. Lopez*, 961 F.2d 384, 386–87 (2d Cir.1992). Gelzer's two prior offenses were sentenced together. However, there was no order of consolidation. *See, e.g., United States v. Russell*, 2 F.3d 200, 204 (7th Cir.1993) (requiring a judicial determination either by formal order or statement on the record that the cases are to be consolidated for sentencing purposes). And they were factually distinct: different victims and different substantive crimes, separated by almost two months. *See Lopez*, 961 F.2d at 386–87 (requiring a "close factual relationship" between predicate convictions); *United States v. Aubrey*, 986 F.2d 14, 14 (2d Cir.) (same), *cert. denied*, —— U.S. ——, 113 S.Ct. 2969, 125 L.Ed.2d 668 (1993). Under these circumstances, the district court's factual conclusion that the two predicate offenses were not related for purposes of § 4A1.2 was not clear error. *See United States v. Connor*, 947 F.2d 1018, 1020 (2d Cir.1991).

■■■■ Next, Robert Gelzer argues that the two attempted robberies were part of a single common scheme or plan because he committed them during a three-month Brooklyn "crime spree," because both thefts were of jewelry (one by burglary and the other by robbery), and because the "common origin" of both crimes is the "hostile environment" in which he was raised under the influence of deficient parental role models. We have noted before that, for purposes of the career offender provision, a single common scheme or plan entails something more cohesive than a pattern of repeated criminal conduct. *See United States v. Chartier*, 970 F.2d 1009, 1016 (2d Cir.1992) (holding that "evidence of a plan simply to commit robberies when and as money is desired or needed" alone is insufficient). We are not persuaded that the Commission intended criminal be-

havior prompted by the same root causes of criminal deviance, even a spree of such crimes, to constitute a "single common scheme or plan" as contemplated by § 4A1.2. In short, the district court's factual conclusion that the two prior convictions were unrelated was not clearly erroneous. *See Connor*, 947 F.2d at 1020.

### H. Grouping of Closely–Related Counts

The defendants claim that the district court erred by failing to group closely-related counts for purposes of sentencing. The defendants argue that Count Two (armed postal robbery) should have been grouped with Count Four (possession of a firearm by a felon) and Count Five (possession of a firearm with an obliterated serial number).[1]

The mechanics for grouping closely-related counts under the Guidelines is relatively straightforward: "[a]ll counts involving substantially the same harm *shall* be grouped together." U.S.S.G. § 3D1.2 (emphasis added). The lettered subsections that follow define situations in which multiple counts are deemed to "involve substantially the same harm."

■■■■ We first consider the defendants' argument on grouping the firearms counts with armed postal robbery pursuant to § 3D1.2(c). A principal purpose of § 3D1.2(c) is to combine like offenses so as to prevent multiple punishment or double counting for substantially identical offense conduct. *See United States v. Hines*, 26 F.3d 1469, 1475 (9th Cir.1994). Under subsection (c), multiple counts are considered to involve "substantially the same harm" and therefore require grouping "[w]hen one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the Guideline applicable to another of the counts." U.S.S.G. § 3D1.2(c). In an apposite example, the Commentary to the Guidelines states that "use of a firearm in

---

1. Robert Gelzer concedes that if only Counts Four and Five were grouped and his status as a career offender were affirmed (*see supra* Part II, Section G), his adjusted offense level of 34 would still apply. Robert Gelzer, however, does not concede that if all three counts were grouped the

applicable offense level would remain 34. Because we conclude that all three counts should have been grouped, the district court should consider on remand the effect of the grouping of all three counts as it relates to Robert Gelzer's sentence.

a bank robbery and unlawful possession of that firearm are *sufficiently related* to warrant grouping." U.S.S.G. § 3D1.2, Application Note 5 (emphasis added). That relatedness is evident in the guideline for robbery, which includes a five-level enhancement for the specific offense characteristic of possessing a firearm during a robbery. *See* U.S.S.G. § 2B3.1(b)(2)(C). Accordingly, the unlawful possession of a firearm is grouped with armed robbery because the conduct embodied in possessing a firearm is substantially identical to the specific offense characteristic of possessing that firearm during a robbery.

In this case, the possession of the firearm was unlawful in three respects: (1) the firearm was possessed and used during the commission of a robbery, (2) it was possessed by a felon, and (3) its serial number was obliterated. The grouping of the first factor is mandated by Application Note 5. In this particular case, the defendants were not given a five-level enhancement pursuant to § 2B3.1(b)(2)(C) because their conviction for using and carrying a firearm during and in relation to a crime of violence (*i.e.,* robbery) entails a mandatory five year consecutive term of imprisonment, and because § 2K2.4 bars use of the weapons possession enhancement when the five-year consecutive term applies. *See* U.S.S.G. § 2K2.4, Application Note 2. This is simply another means of avoiding double counting.

■ With regard to possession of a firearm by a felon, the grouping issue turns on whether the conduct comprising that offense is sufficiently related to the specific offense characteristic of possession of a firearm during a robbery *and* whether the offenses are "closely related." *See* U.S.S.G. § 3D1.2, Application Note 5. The record establishes that all three defendants were felons and that all of them possessed the weapon during the robbery. However, the only act of possession that the prosecution undertook to show was possession during the robbery. Therefore, we need not decide whether grouping would be required if the prosecution had

charged and shown that one or another of the defendants possessed the weapon prior to (or after) the armed robbery. In this case, the "conduct embodied" in the possession of a firearm by a felon is indistinguishable from and temporally related to the offense conduct of possessing that firearm during the postal robbery. In addition, we note that grouping here furthers the ostensible purpose of avoiding "double counting" because each defendant's status as a felon is likely to be reflected in his criminal history category.

■ As to possession of a firearm with an obliterated serial number, it can be argued that the same § 3D1.2(c) grouping analysis should apply because the conduct embodied in the possession of that firearm is treated as a specific offense characteristic of robbery. It is not clear, however, that the application of the Guidelines to the offense of armed postal robbery committed by these defendants takes into account the fact that the firearm used had an obliterated serial number. We need not resolve that issue, because we conclude, for an independent reason, that possession of a firearm with an obliterated serial number should be grouped with possession of a firearm by a felon.

■ The defendants challenged the failure to group the firearms counts prior to sentencing. However, both the Probation Department and (later) the district court overlooked the unambiguous language of the Guidelines and adopted the wrong analytical test in resolving this issue. Subsection (d) of § 3D1.2 applies generally where "the offense level is determined largely on the basis of the total amount of harm or loss, ... or some other measure of aggregate harm."[2] Subsection (d) proceeds to specify various categories of offenses for which grouping applies (*e.g.,* § 2B1.1 covering larceny, embezzlement, and other forms of theft; § 2D1.1 covering unlawful manufacturing, importing, exporting, or trafficking of narcotics; and § 2F1.1 covering fraud and deceit) and a second list of offenses which are specifically "excluded" from grouping (*e.g.,* § 2B2.1 cov-

---

**2.** The Commentary to the Guidelines states that "[s]ubsection (d) ... provides that most property crimes (except robbery, burglary, extortion and the like), drug offenses, firearms offenses, and

other crimes where the guidelines are based primarily on quantity or contemplate continuing behavior are to be grouped together." U.S.S.G. § 3D1.2, Application Note 6.

ering burglary; § 2D2.1 covering unlawful possession of narcotics; and § 2G1.1 covering transportation for the purpose of prostitution). Where particular offenses are neither expressly included nor excluded, the Guidelines call for a "case-by-case determination" of whether grouping is appropriate.

For purpose of determining the "offense conduct" under Chapter Two, the operative provision for the firearms counts is § 2K2.1, which relates to the unlawful receipt, possession, or transportation of firearms. Prior to November 1, 1990, firearms offenses under § 2K2.1 were not referenced in § 3D1.2(d). Consequently, when a defendant was convicted of multiple counts each governed by § 2K2.1, district courts were called upon to determine whether the offenses involved "substantially the same harm" by analyzing the nature of the societal interest invaded by each offense. § 3D1.2, Application Note 2. *See, e.g., United States v. Bruder,* 945 F.2d 167, 170–72 (7th Cir.1991) (grouping possession of an unregistered firearm, in violation of 26 U.S.C. § 5861, and possession of a firearm by a person previously convicted of a felony, in violation of 18 U.S.C. § 922(g)); *United States v. Bakhtiari,* 913 F.2d 1053, 1062 (2d Cir.1990) (refusing to group charges of possession of pistol and possession of silencer because the offenses impair distinct societal interests), *cert. denied,* 499 U.S. 924, 111 S.Ct. 1319, 113 L.Ed.2d 252 (1991); *United States v. Pope,* 871 F.2d 506, 510 (5th Cir.1989) (same). By virtue of amendments in 1990 and 1991, however, the Guidelines now expressly state that § 2K2.1 offenses are to be grouped. *See* U.S.S.G. Appendix C, Nos. 349, 374, 417.

The government contends that the defendants did not preserve their position that the firearms counts should be grouped and that our standard of review is plain error. We disagree. In a September 22, 1993 letter to the Probation Department, Ronald Gelzer objected to the failure to group the firearms counts in his presentence report. Ronald Gelzer directed the Probation Department to the unambiguous language of § 3D1.2(d) which mandates that all § 2K2.1 offenses be grouped. The Probation Department nevertheless concluded that the

proper grouping analysis was the "societal interests" test. At sentencing, the defendants again objected to the failure to group the firearms counts. Apparently convinced by then that the "societal interests" test would control, the defendants argued that each count involved similar societal interests because they involved substantially the same harm. Chief Judge Platt responded:

> the Probation Department said they did not agree with that and I agree with the Probation Department on that, I'm not going to group them, I'm going to adopt the Probation Department['s view].

Because this failure to group the firearms counts was clear error, the sentences of Ronald Gelzer and Leon Griffin are vacated and remanded for resentencing. Robert Gelzer's sentence is vacated and remanded for reconsideration of whether the failure to group Count Two with the firearms counts is harmless error in light of his career offender status. *See supra* note 1.

### Conclusion

We have considered the defendants' remaining arguments and find them without merit. We vacate the sentences of all three defendants and remand to the district court for resentencing consistent with this opinion.