101 F.3d 108
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
UNITED STATES of America, Appellee,
v.
Rudolph SANTOBELLO and Charles Desalvo, also known as
Charlie, Defendants-Appellants.
 Nos. 95-1173, 95-1452.
 United States Court of Appeals, Second Circuit.
 March 14, 1996.
 
 Before LUMBARD, MINER and JACOBS, Circuit Judges.
 
 
 1
 APPEARING FOR APPELLANTS: B. Alan Seidler, Nyack, NY.
 
 
 2
 APPEARING FOR APPELLEE: Douglas M. Lankler, Assistant United States Attorney for the Southern District of New York, New York, NY.
 
 
 3
 UPON CONSIDERATION of this appeal from judgments of the United States District Court for the Southern District of New York, it is hereby
 
 
 4
 ORDERED, ADJUDGED, AND DECREED that the judgments be and hereby are AFFIRMED.
 
 
 5
 This cause came on to be heard on the transcript of record and was argued by counsel.
 
 
 6
 Defendants-appellants Rudolph Santobello and Charles DeSalvo appeal from judgments of conviction and sentence entered in the United States District Court for the Southern District of New York (Patterson, J.). Santobello was convicted, after a jury trial, of racketeering conspiracy in violation of 18 U.S.C. § 1962(d), racketeering in violation of 18 U.S.C. § 1962(c), conspiring to collect unlawful debts in violation of 18 U.S.C. § 1962(d), conspiring to make extortionate extensions of credit in violation of 18 U.S.C. §§ 891, 892, 893, and 894, gambling conspiracy in violation of 18 U.S.C. § 1955, and operating illegal gambling businesses in violation of 18 U.S.C. § 1955. Santobello was sentenced to a 78-month term of imprisonment, a three-year term of supervised release, a $50,000 fine, and a $500 special assessment. DeSalvo was convicted, after a jury trial, of racketeering conspiracy in violation of 18 U.S.C. § 1962(d), racketeering in violation of 18 U.S.C. § 1962(c), gambling conspiracy in violation of 18 U.S.C. § 1955, and operating illegal gambling businesses in violation of 18 U.S.C. § 1955. DeSalvo was sentenced to a 24-month term of imprisonment, a two-year term of supervised release, and a $250 special assessment.
 
 
 7
 The Genovese Crime Family (the "Family") was an organized criminal enterprise engaged in gambling and loansharking throughout the New York metropolitan area. The Family was organized into "crews" of "made members." Other individuals, known as "associates," were not "made members" of the Family but assisted them in their criminal activities. Each crew was headed by a "caporegime," also known as a "capo" or "captain," who supervised the activities of crew members and associates.
 
 
 8
 According to evidence at trial, beginning in at least 1990, Santobello was a capo of the Family, and supervised a crew from his headquarters at a social club at 2343 Arthur Avenue in the Bronx ("Club Arthur"). DeSalvo was an associate of Santobello's crew and often visited Santobello at Club Arthur. One of the illegal activities conducted by Santobello's crew was loansharking. From early 1991, Santobello and his partner, Daniel Cilenti, made and collected extortionate extensions of credit. Evidence also showed that, in August and September of 1992, Santobello used a storefront at 2500 Arthur Avenue in the Bronx to run craps games. Santobello supervised the operation, and Santobello's associates, including DeSalvo, Benjamin Castellazzo, Anthony Sedotto, and Frank DiVito, handled the day-to-day management of the games. In addition, Santobello conducted a numbers operation. From Club Arthur, Santobello received wagers and reports on the winning numbers, and he calculated the payments to be made to the winners.
 
 
 9
 Santobello also was involved in bookmaking operations. In the spring of 1993, Santobello sent DeSalvo to work at a bookmaking parlor at 844 Morris Park Avenue. DeSalvo generated profits by charging losing gamblers interest of up to 20%. DeSalvo and the other operators would attempt to reduce their losses by "laying off" bets to other bookmakers, if one side in a sporting event became too heavily favored by gamblers. From the spring of 1992 through October of 1992, Santobello also was involved in a bookmaking operation run by his associates, Joseph Sarcinella, Joseph Spano, and Joseph Silvestri.
 
 
 10
 On August 31, 1994, a 13-count superseding indictment was filed, charging Santobello, DeSalvo, and seven co-defendants with various crimes related to their association with the Family. After the superseding indictment was filed and prior to trial, five co-defendants--Cilenti, Castellazzo, Vito Raguso, Sarcinella, and Silvestri--pleaded guilty. The trial of Santobello, DeSalvo, and two co-defendants commenced on September 26, 1994.
 
 
 11
 On October 24, 1994, Santobello was convicted on ten counts and DeSalvo was convicted on five counts. On March 27, 1995, Santobello was sentenced to a 78-month term of imprisonment, a three-year term of supervised release, a $50,000 fine, and a $500 special assessment. On July 18, 1995, DeSalvo was sentenced to a 24-month term of imprisonment, a two-year term of supervised release, and a $250 special assessment. This appeal followed.[1]
 
 
 12
 Santobello and DeSalvo argue that the district court committed reversible error in instructing the jury on the § 1962(c) racketeering count. We disagree. Under § 1962(c), it is unlawful for any person associated with any enterprise "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." In Reves v. Ernst & Young, 113 S.Ct. 1163 (1992), the Supreme Court held that " 'to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must participate in the operation or management of the enterprise itself." Id. at 1173 (citation omitted).
 
 
 13
 The government concedes that the district court's jury instruction was erroneous because it did not include Reves ' "operation or management" requirement. Because Santobello and DeSalvo failed to object to the erroneous jury charge, we review their claims for plain error. See Fed.R.Crim.P. 52(b). "Plain error is error so egregious as to result in a miscarriage of justice." United States v. Thai, 29 F.3d 785, 816 (2d Cir.), cert. denied, 115 S.Ct. 456 (1994). In previous cases in which Reves language has been omitted from a § 1962(c) jury charge, we have held that the error did not require reversal where the proof at trial demonstrated that the appellants had played some part in directing the affairs of the charged enterprise. See United States v. Wong, 40 F.3d 1347, 1374 (2d Cir.1994), cert. denied, 116 S.Ct. 190 (1995); Thai, 29 F.3d at 816.
 
 
 14
 In the present case, the evidence showed that Santobello and DeSalvo helped direct the affairs of the Family. Santobello, as a capo in the Family, directed his crew's criminal activities. DeSalvo also played some part in managing certain Family activities. The Supreme Court noted in Reves that "[a]n enterprise is 'operated' not just by upper management but also by lower-rung participants ... who are under the direction of upper management." Id. at 1173. As a bookmaker, DeSalvo was responsible for making decisions on whether to hedge sports bets and generally for keeping the business profitable. In the craps operation, DeSalvo, as a dealer, was responsible for handling and monitoring the bets. Accordingly, the jury instruction on § 1962(c) was not plain error.
 
 
 15
 Santobello also argues that the district court erred in admitting excerpts of the plea allocutions of Cilenti and Sarcinella pursuant to Fed.R.Evid. 804(b)(3), and in excluding other portions of the plea allocutions. We reject this contention. Under Fed.R.Evid. 804(b)(3), a statement by an unavailable witness against his penal interest may be admitted into evidence. The statements in the plea allocutions of Cilenti and Sarcinella were against their penal interests, and thus properly admitted. See United States v. Scopo, 861 F.2d 339, 348 (2d Cir.1988), cert. denied, 490 U.S. 1048 (1989). In addition, Cilenti's statement declining to name his associates, and the statement by counsel for Sarcinella exculpating Santobello, were properly excluded, since these statements were not self-inculpatory. See Williamson v. United States, 114 S.Ct. 2431, 2435 (1994).
 
 
 16
 In addition, Santobello contends that the district court erred in determining at sentencing that his criminal history category was II. This claim is without merit. The district court properly found that the evidence demonstrated that Santobello had participated in a numbers operation under the control of the Family within 15 years of his prior 1971 conviction, resulting in an increase in his criminal history category. See U.S.S.G. §§ 4A1.1(a) and 4A1.2(e)(1).
 
 
 17
 DeSalvo argues that the evidence was insufficient for his conviction on racketeering conspiracy, racketeering, and operating the craps games at 2500 Arthur Avenue. Specifically, DeSalvo claims there was insufficient evidence that five or more persons conducted the craps games because there was no proof of the involvement of Frank DiVito, allegedly the fifth person. We disagree.
 
 
 18
 A defendant challenging the sufficiency of the evidence, following his conviction by the jury, "takes on a heavy burden." United States v. Gelzer, 50 F.3d 1133, 1142 (2d Cir.1995). "An appellate court must view all of the evidence, whether direct or circumstantial, in the light most favorable to the government and must credit all inferences and credibility assessments that the jury might have drawn in favor of the government." Id. In the present case, there was sufficient evidence that DiVito was involved with the craps games. For instance, on August 28, 1992, just two weeks prior to the FBI's raid of the craps games at 2500 Arthur Avenue, agents observed DiVito using a set of keys to open the storefront there. Shortly after DiVito opened the storefront, DeSalvo, Sedotto, and Castellazzo were seen arriving at the location, conferring with each other, and then entering the storefront. DiVito subsequently was observed allowing unknown persons to enter. Accordingly, there was sufficient evidence for the jury to find that DiVito was directly involved in the conduct of the craps games.
 
 
 19
 We have considered the remaining contentions of Santobello and DeSalvo, and we find them all to be without merit.
 
 
 
 [1]
 On September 12, 1995, this Court granted the government's motion to consolidate the appeal of DeSalvo with the appeal of Santobello