101 F.3d 683
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
UNITED STATES of America, Appellee,
v.
Craig WILLIAMS, Darryl Board, Anderson King, aka Hasan
Abdul-Malik, and Idris Cox, Defendants-Appellants,
Najimah Abdul and Jerome Tolden, aka Wadoud, Defendants.
 Nos. 94-1247, 94-1284, 94-1351, 94-1352.
 United States Court of Appeals, Second Circuit.
 April 30, 1996.
 
 1
 APPEARING FOR APPELLANTS: John Burke, Brooklyn, New York, for Craig Williams.
 
 
 2
 Joyce David, Brooklyn, New York, for Darryl Board.
 
 
 3
 Fern H. Schwaber, New York, New York, for Idris Cox.
 
 
 4
 David G. Secular, New York, New York, for Anderson King.
 
 
 5
 APPEARING FOR APPELLEE: Charles W. Gerber, Assistant United States Attorney for the Eastern District of New York, Brooklyn, New York.
 
 
 6
 E.D.N.Y.
 
 
 7
 AFFIRMED.
 
 
 8
 Before VAN GRAAFEILAND, MAHONEY and WALKER, JJ.
 
 
 9
 This cause came on to be heard on the transcript of record from the United States District Court for the Eastern District of New York and was argued by counsel.
 
 
 10
 ON CONSIDERATION WHEREOF, IT IS ORDERED, ADJUDGED AND DECREED that the judgments of the district court be and they hereby are AFFIRMED.
 
 
 11
 1. Defendants-appellants Craig Williams, Darryl Board, Anderson King, and Idris Cox appeal from judgments entered May 16, 1994, May 2, 1994, June 21, 1994, and June 22, 1994, respectively, in the United States District Court for the Eastern District of New York that convicted them of conspiring to commit armed robberies in violation of 18 U.S.C. § 371, substantive counts of armed robbery in violation of 18 U.S.C. §§ 2113 and 2114, and counts of using and carrying a firearm during a crime of violence in violation of 18 U.S.C. § 924(c). In addition, Williams was convicted of assault and attempted murder of a member of the New York City Police Department/Federal Bureau of Investigation Joint Armed Bank Robbery Task Force in violation of 18 U.S.C. §§ 111 and 1114. On appeal, defendants-appellants raise various challenges to their convictions and to the calculation of their sentences, all of which are without merit.
 
 
 12
 2. Williams and Board argue that 18 U.S.C. § 924(c), as applied in this case, violates the Eighth Amendment's prohibition against cruel and unusual punishment. Williams was sentenced to more than 160 years incarceration (145 years for violating § 924(c)), and Board was sentenced to more than 56 years imprisonment (45 years for violating § 924(c)). In view of the extremely violent criminal conduct of which Williams and Board were convicted and the range and extent of their violent criminal activity, we conclude that their sentences for such conduct do not violate the Eight Amendment. See United States v. Santos, 64 F.3d 41, 46 (2d Cir.1995) (affirming § 924(c) 30-year mandatory sentence for possessing silencer under criteria set forth in Solem v. Helm, 463 U.S. 277, 292 (1983)), cert. denied, 116 S.Ct. 1038 (1996); see also Harmelin v. Michigan, 501 U.S. 957, 994-96 (1991) (upholding sentence of life without parole for possession of 672 grams of cocaine).
 
 
 13
 3. Williams and King contend that the district court abused its discretion by permitting the introduction of similar act evidence in violation of Rule 404(b) of the Federal Rules of Evidence. Specifically, Williams claims that co-conspirator Marcus Robertson's testimony that proceeds from robberies committed during the charged conspiracy were used to bail Williams out of jail in Nassau County violated Rule 404(b). King contends that the district court erred by admitting proof of robberies committed prior to the charged conspiracy by him and his subsequent coconspirators. We conclude that this testimony served to explain the relationship between the conspirators, see United States v. Pitre, 960 F.2d 1112, 1119 (2d Cir.1992) ("Prior act evidence may be admitted to inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between participants in the crime developed."), and to depict for the jury how the conspiracy relationship developed, see United States v. Brennan, 798 F.2d 581, 590 (2d Cir.1986) (Rule 404(b) evidence admitted to show how relationship between coconspirators developed). Accordingly, the district court did not abuse its discretion in admitting this evidence. See United States v. Sappe, 898 F.2d 878, 880 (2d Cir.1990) (trial court decision to admit evidence under Rule 404(b) reviewed for abuse of discretion).
 
 
 14
 4. Williams challenges his convictions for the attempted murder of a United States Deputy Marshal, 18 U.S.C. § 1114, using a deadly weapon to impede a deputy marshal, 18 U.S.C. § 111, and carrying a firearm in connection with these charges, 18 U.S.C. § 924(c). These charges arose from Williams' shooting of New York City Police Department Detective Charles Jardines on October 10, 1991. Sections 111 and 1114 criminalize, respectively, assaults and the murder or attempted murder of individuals listed in § 1114. Williams claims that because Detective Jardines was not a Deputy United States Marshal within the meaning of 18 U.S.C. § 1114, his convictions arising out of the shooting of Detective Jardines must be vacated. The § 1114 listing includes "any United States marshal or deputy marshall or person employed to assist such marshal or deputy marshal, [and] any officer or employee of the [FBI]." Because Detective Jardines was acting in his capacity as a sworn Special Deputy United States Marshal at the time Williams shot him, we conclude that Williams was properly convicted under 18 U.S.C. §§ 111, 1114, and 924(c) for his conduct. See United States v. Heliczer, 373 F.2d 241, 249 (2d Cir.) (holding that assault on state detective "acting in cooperation with and in aid of federal officers" constituted a violation of § 111), cert. denied, 388 U.S. 917 (1967).
 
 
 15
 5. Williams, Board, and Cox claim that their convictions under 18 U.S.C. § 924(c) must be vacated because the indictment failed specifically to allege that they acted with knowledge, an essential element of the § 924(c) offense. We have held, however, that "scienter need not be expressly alleged in a section 924(c) count." United States v. Santeramo, 45 F.3d 622, 624 (2d Cir.1995). Because this indictment charged the defendants with carrying or using a firearm "during and in relation to" substantive offenses, it sufficiently comports with the rule we articulated in Santeramo. See id.; see also United States v. Gelzer, 50 F.3d 1133, 1138 (2d Cir.1995). Additionally, we reject Board's contention, asserted pro se, that the district court impermissibly amended the indictment in instructing the jury on the elements of a § 924(c) offense. See United States v. Clemente, 22 F.3d 477, 482 (2d Cir.) (indictment constructively amended only when "there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged by the grand jury"), cert. denied, 115 S.Ct. 258 (1994). Finally, Board's claim that his § 924(c) conviction for the Anchor Savings Bank robbery was based upon insufficient evidence is also without merit. See Gelzer, 50 F.3d at 1142 (conviction must be affirmed if a reasonable juror might fairly have concluded that defendant was guilty of crime charged).
 
 
 16
 6. Williams and Board argue that the district court denied them due process of law and their right to confront the witnesses against them by limiting the scope of their cross-examination of coconspirator Marcus Robertson and Postal Inspector Stephen Korinko. The district court's restriction on cross-examination related to Robertson's alleged involvement in the robbery of the Spring Creek Post Office, a crime in which defendants-appellants were not involved. Because "the scope and extent of cross-examination are generally within the sound discretion of the trial court," United States v. Pedroza, 750 F.2d 187, 195 (2d Cir.1984), and the issues about which testimony was limited were collateral to the main proceedings, we conclude that the district court did not abuse its discretion when it limited the cross-examination that Williams and Board sought concerning this matter.
 
 
 17
 7. Board argues that the district court erred by increasing his offense level pursuant to USSG § 2B3.1(b)(4)(B) after finding that persons were "physically restrained" during the commission of a robbery in which he participated. The Sentencing Guidelines define "physically restrained" as "the forcible restraint of the victim such as by being tied, bound, or locked up." USSG § 1B1.1, comment. (n. 1(i)). "The use of the modifier 'such as' in the definition indicates that the illustrations of physical restraint 'are listed by way of example rather than limitation.' " United States v. Rosario, 7 F.3d 319, 320-21 (2d Cir.1993) (per curiam) (quoting United States v. Stokley, 881 F.2d 114, 116 (4th Cir.1989)). We conclude that the district court's findings that the defendants-appellants ushered their victims into a dark room, instructed the victims that they were not to leave the room, and closed the door are not clearly erroneous. Furthermore, we agree with the district court that these circumstances constituted the sort of "forcible restraint of a victim's mobility," Rosario, 7 F.3d at 321, that justifies an increase under § 2B3.1(b)(4)(B). See United States v. Doubet, 969 F.2d 341, 345-48 (7th Cir.1992) (ordering bank tellers into an unlocked bathroom under threat of violence constituted physical restraint under § 2B3.1(b)(4)(B)).
 
 
 18
 8. We find no error in the district court's decision to allow a witness, Joanne DeMaria, to make an in-court identification of Cox. Even if we were to assume that DeMaria's opportunity to view Cox during the trial was unduly suggestive, we would nevertheless conclude that DeMaria's in-court identification was sufficiently reliable. See United States v. Kwong, 69 F.3d 663, 666 (2d Cir.1995) ("[The court conducts] an inquiry into whether the in-court identification was independently reliable."), cert. denied, 64 U.S.L.W. 3641 (U.S. Mar. 25, 1996). Although DeMaria observed Cox for only a brief moment during the robbery, she was very close to him and was able to look directly into his face. Additionally, at the district court's Wade hearing, DeMaria identified specified facial characteristics that she remembered from the robbery. Finally, the eighteen months between the robbery and the identification was a relatively short period of time. Cf. id. (finding identification reliable despite lapse of five years between crime and identification); United States v. Tortora, 30 F.3d 334, 338-39 (same).
 
 
 19
 9. The district court properly enhanced Cox's offense level for obstruction of justice pursuant to USSG § 3C1.1. Its findings that (1) Cox said "we will get you" to Robertson during a break in Robertson's testimony, and (2) Cox made the statement for the purpose of obstructing justice, are not clearly erroneous and therefore support an enhancement under the Guidelines.
 
 
 20
 10. Section 1B1.2(d) of the Sentencing Guidelines instructs the sentencing court to treat "[a] conviction on a count charging a conspiracy to commit more than one offense ... as if the defendant had been convicted on a separate count of conspiracy for each offense that the defendant conspired to commit." When "the [jury's] verdict ... does not establish which offense[§ were] the object of the conspiracy," the sentencing court is instructed that "subsection (d) should only be applied with respect to an object offense alleged in the conspiracy count if the court, were it sitting as a trier of fact, would convict the defendant of conspiring to commit that object offense." § 1B1.2(d), comment. (n. 5). In the present case, Cox was found guilty of involvement in a multi-object conspiracy, but the jury's general verdict did not specify which specific offenses were the objects of that conspiracy. Cox argues that in treating the conviction as if Cox had been convicted of five separate counts of conspiracy, the district court violated his right to a jury determination of his guilt. However, we have long recognized that it is the function of the sentencing court to determine facts relative to sentencing, and that this may be done by a preponderance of the evidence standard. See United States v. Concepcion, 983 F.2d 369, 387-88 (2d Cir.1992), cert. denied, 114 S.Ct. 163 (1993). Here, following the explicit command of the Guidelines commentary, Judge Hurley determined that Cox was guilty concerning each object offense beyond a reasonable doubt. Accordingly, Cox's attack on the constitutionality of U.S.S.G. § 1B1.2(d) is rejected. Furthermore, viewing the evidence in the light most favorable to the Government, we find no error in the district court's determination that Cox was guilty beyond a reasonable doubt of conspiring to rob the five banks.
 
 
 21
 11. Cox contends that the district court should have granted his request to review in camera statements made to the government by nontestifying witnesses to the robbery of Anchor Savings Bank or, in the alternative, should have directed the government to disclose to the defense the names, addresses, and telephone numbers of those witnesses. Although the government has a duty to turn over all material exculpatory evidence in its possession, Brady v. Maryland, 373 U.S. 83, 87 (1963), "[t]ypically, the prosecution itself makes the initial determination as to what evidence must be disclosed to the defense," United States v. Leung, 40 F.3d 577, 582 (2d Cir.1994). The trial court is under no obligation to conduct an in camera review of the government's files unless the defendant can "establish[ ] a basis for his claim that [they] contain[ ] material evidence." Pennsylvania v. Ritchie, 480 U.S. 39, 58 n. 15 (1987). Because Cox has established no such basis here, the district court's decision was not erroneous. Further, Cox provides no authority for the proposition that the government should have been required to provide wholesale identification of witnesses whom it had interviewed but declined to call, and we will not impose such a requirement.
 
 
 22
 12. King contends that the evidence presented at trial failed to support the jury's finding that he participated in the charged conspiracy. Viewing all evidence in the light most favorable to the government and drawing all permissible inferences of guilt therefrom, United States v. Friedman, 854 F.2d 535, 553 (2d Cir.1988), cert. denied, 490 U.S. 1004 (1989), we conclude that there was sufficient evidence to establish King's membership in the charged conspiracy. See United States v. Miranda-Ortiz, 926 F.2d 172, 176 (2d Cir.) (single transaction may suffice as basis for inferring membership in conspiracy), cert. denied, 502 U.S. 928 (1991).
 
 
 23
 13. King argues that the district court improperly interfered with his Fifth Amendment right to testify in his own behalf by preliminarily ruling that, should King testify, the court would probably allow the government to cross-examine King regarding a home invasion that he undertook with two of his alleged coconspirators, and might strike King's direct testimony if he invoked the Fifth Amendment privilege against self-incrimination in response to such cross-examination. Whether or not King waived this claim by thereafter electing not to testify, see Luce v. United States, 469 U.S. 38, 43 (1984), we believe that the district court correctly concluded, based upon King's proffer, that the government would have been entitled to impeach his testimony with evidence of prior crimes King had committed with his coconspirators. See United States v. Ortiz, 553 F.2d 782, 784-85 (2d Cir.) (finding no abuse of discretion in court ruling that government could use earlier heroin conviction to impeach defendant even though defendant asserted that such ruling caused him to forego testifying in his own behalf), cert. denied, 434 U.S. 897 (1977).
 
 
 24
 14. King contends that the district court erred in sentencing him by: (1) upwardly departing four points for his leadership role in the charged conspiracy, USSG § 3B1.1(a); (2) upwardly departing two points for the assault and physical restraint of postal employees during the course of a robbery on the basis that such conduct was reasonably foreseeable and within the scope of the conspirators' agreement, USSG 1B1.3(a)(1)(B); (3) double counting, in violation of USSG § 2K2.4, comment. (n. 2), for the physical injuries caused to a postal employee when that employee was pistol whipped in the course of a robbery, by enhancing his sentence for such conduct pursuant to USSG § 2B3.1(b)(2)(D) while sentencing him for that same conduct pursuant to § 924(c); and (4) upwardly departing one criminal history category to level IV, pursuant to USSG § 4A1.3, p.s., because level III did not adequately reflect the full nature and extent of King's criminal conduct. According due deference to the district court's application of these guidelines to the instant facts, 18 U.S.C. § 3742(e), and reviewing the legal conclusions of the sentencing court de novo and its factual findings for clear error, see United States v. Deutsch, 987 F.2d 878, 884-85 (2d Cir.1993), we conclude that the district court did not err in calculating King's sentence. We note, as to the double counting contention, that King's § 924(c) sentence and § 2B3.1(b)(2)(D) enhancement did not relate to the same robbery.