**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Jose De Jesus Flores MARTINEZ, Defendant–Appellee.**

**No. 91–30096.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 9, 1992.

Decided Aug. 17, 1992.

As Amended Sept. 17, 1992.

Nina Goodman, Asst. U.S. Atty., U.S., Dept. of Justice, Washington, D.C., for plaintiff-appellant.

Bryan E. Lessley, Asst. Federal Public Defender, Eugene, Or., for defendant-appellee.

Before: BROWNING, D.W. NELSON and CANBY, Circuit Judges.

CANBY, Circuit Judge.

This is an interlocutory appeal by the United States of an order suppressing a statement that defendant Jose Flores Martinez made to federal investigators. The central issue is whether Martinez's request for counsel in his state proceedings prohibited a subsequent interrogation by federal officials outside the presence of counsel after the state charges were dismissed. We conclude that the resolution of this question depends on the degree of cooperation between federal and state authorities, which is not clear from the record before us. We therefore remand.

FACTUAL BACKGROUND

Martinez was arrested in March 1990 and was subsequently charged in the Circuit Court for Wasco County, Oregon with possession of a firearm by a convicted felon, theft of a firearm, and possession of a controlled substance. At his arraignment, he requested an attorney and completed a form entitled "Affidavit of Indigence and Order for Appointment of Counsel." The

state charges were dismissed, however, so no attorney was appointed. Martinez nonetheless remained in state custody, because his pre-existing parole had been revoked as a result of his arrest.

On September 4, 1990, two days before Martinez's custodial time on the parole violation was scheduled to elapse, a federal criminal complaint was filed alleging possession of a firearm by Martinez, a convicted felon. On September 6, state authorities released him into federal custody. The federal agents advised Martinez of his *Miranda* rights, which he waived, and then questioned him about the gun at issue. During that interrogation, Martinez admitted that he had knowingly purchased the handgun, and he executed an affidavit to that effect. On the same day, Martinez made his first appearance in federal court and counsel was appointed. After he was indicted, Martinez moved to suppress his statement to the federal agents, arguing that their initiation of interrogation after his request for counsel on the state charges violated his rights under the Fifth and Sixth Amendments. No evidence was introduced about the relationship between the state and federal investigations. The district court granted Martinez's motion, and the United States now appeals.[1]

DISCUSSION

The issue in this case is relatively straightforward: Did Martinez's request for counsel at his arraignment on state charges preclude the federal officers from questioning him outside the presence of counsel on federal charges arising from the same incident, when the state charges had been dismissed? Martinez suggests two possible bases for an answer in the affirmative: the *Miranda* rights under the Fifth Amendment and the Sixth Amendment right to counsel.

I. The Fifth Amendment

█ Martinez argues that his request for an attorney at the state arraignment, which clearly triggered his Sixth Amend-

ment right to counsel for the state charges, also invoked his Fifth Amendment right to an attorney under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), thereby preventing the federal agents (as well as the state officials) from questioning him about *any* offense outside the presence of counsel. *Arizona v. Roberson*, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988) (if suspect invokes *Miranda* right to counsel, police cannot reapproach regarding different offense unless counsel is made available). The district court ruled in favor of Martinez on the *Miranda* ground. In doing so, however, the district court did not have the benefit of the later decision of the Supreme Court in *McNeil v. Wisconsin*, — U.S. ——, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991). In that case, McNeil requested an attorney at a bail hearing on an armed robbery charge (arising out of an incident in West Allis, Wisconsin), thereby triggering his Sixth Amendment right to counsel. Police subsequently interrogated him (after properly advising him of his *Miranda* rights) about a murder in Caledonia, Wisconsin, and he made several incriminating statements about the Caledonia crime. McNeil contended that his request for counsel at the bail hearing invoked both his Sixth and Fifth Amendment rights to counsel, and that the court accordingly should have suppressed the evidence arising out of the interrogations on the Caledonia murder. The Supreme Court rejected that argument, holding that McNeil's invocation of his Sixth Amendment right to counsel did not also invoke his Fifth Amendment right to counsel. In so ruling, the court stated that application of *Miranda* and *Edwards* "requires, at a minimum, some statement that can reasonably be construed to be expression of a desire for the assistance of an attorney *in dealing with custodial interrogation by the police.* Requesting the assistance of an attorney at a bail hearing does not bear that construction." *McNeil*, 111 S.Ct. at 2209 (emphasis

---

**1.** Whether law enforcement officers may initiate interrogation of a suspect who previously requested counsel is a question of law that we review de novo. *See United States v. DeSantis*, 870 F.2d 536, 538 (9th Cir.1989).

in original). Martinez gives us no reason to distinguish his invocation of his Sixth Amendment right at his arraignment from McNeil's similar invocation at his bail hearing, and there appears to be none. In both cases, the suspect requested assistance of counsel in defending himself at trial, and in neither case did the suspect express his "desire for the assistance of an attorney *in dealing with custodial interrogation by the police.*" We conclude, therefore, that *McNeil* applies to Martinez's Fifth Amendment argument and compels us to reject Martinez's assertion that the federal authorities' interrogation violated his right to counsel under the Fifth Amendment. It was accordingly error for the district court to suppress Martinez's statement on *Miranda* grounds.

## II. The Sixth Amendment

In *Michigan v. Jackson*, 475 U.S. 625, 636, 106 S.Ct. 1404, 1411, 89 L.Ed.2d 631 (1986), the Supreme Court held that "if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid." The Court in *Jackson* had no occasion to consider the question of an interrogation for another crime, but the Supreme Court discussed the issue in *Maine v. Moulton*, 474 U.S. 159, 179–80, 106 S.Ct. 477, 488–89, 88 L.Ed.2d 481 (1985), and ruled on it in *McNeil.* In the latter case, as we noted above, McNeil had requested (and received) assistance of counsel with respect to the West Allis charge but was later interrogated about the Caledonia murder outside the presence of counsel. The Supreme Court found that the statements McNeil gave in the interrogations did not fall under the *Jackson* rule, because they concerned separate offenses. The Court stated that both the Sixth Amendment right and "its *Michigan v. Jackson* effect of invalidating subsequent waivers in police-initiated interviews [are] offense-specific." 111 S.Ct. at 2207; *see also Moulton*, 474 U.S. at 179–80 & nn. 15, 16, 106 S.Ct. at 488–89 & nn. 15, 16 (noting admissibility of post-arraignment statements if involving other crimes).

The dispositive issue regarding the Sixth Amendment claim in the instant case, as both the United States and Martinez agree, is whether, in light of *McNeil* and *Moulton, Jackson* applies to the federal authorities' interrogation of Martinez. Resolution of this question depends upon the significance of two factors: (1) that the state and federal charges arose from identical conduct, and (2) that the state charges had been dismissed at the time of the federal interrogation.

With regard to the first factor, the Supreme Court offers no definitive signals. All of the relevant Supreme Court cases either involved interrogations regarding the charged offense (e.g., *Jackson* and *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964)) or interrogations concerning separate offenses arising from separate acts (e.g., *McNeil* and *Moulton* ). None involved separate prosecutions for the same set of acts, which is what we have here.

There is language in *McNeil* that can be read as supporting either the United States's or Martinez's position. It is true, as the United States notes, that *McNeil* states that *Jackson* 's effect is "offense-specific," *McNeil*, 111 S.Ct. at 2207, and that this phrase could reasonably be interpreted as limiting Martinez's Sixth Amendment protection to the state firearms offense. It is also true, however, that *McNeil* relied on *Moulton*, which in turn focused on the existence of " 'new or additional crimes.' " *McNeil*, 111 S.Ct. at 2207 (quoting *Moulton*, 474 U.S. at 179, 106 S.Ct. at 489). This language could reasonably be read as suggesting that *Jackson* does apply to Martinez, because the federal questioning concerned no new or additional crime of Martinez.

This court has recently opined that "[a]n exception to the offense-specific requirement of the Sixth Amendment occurs when the pending charge is so inextricably intertwined with the charge under investigation that the right to counsel for the pending charge cannot constitutionally be isolated

from the right to counsel for the uncharged offense." *United States v. Hines,* 963 F.2d 255, 257 (9th Cir.1992). Certainly the state charges against Martinez and the federal charge were "inextricably intertwined," for they involved the same conduct. *Hines,* then, supports Martinez's view that the state and federal charges are so similar that they should be treated as the "same" for Sixth Amendment purposes.

In *Hines,* however, we were dealing with interrogation concerning a second crime when charges for the first crime were still pending. Here, the state charge had been dismissed. Although Martinez was still in state custody because his parole had been revoked, there was no pending state charge for which he needed the assistance of counsel. That distinction brings us to a consideration of the second factor—the gap between the pendency of state charges and the interrogation on the federal charges.

In urging that dismissal of the state charges totally ended Martinez's Sixth Amendment right of counsel, the United States focuses on the Supreme Court's statement that the Sixth Amendment right to counsel "arises from the fact that the suspect has been formally charged with a particular crime and thus is facing a state apparatus that has been geared up to prosecute him." *Roberson,* 486 U.S. at 685, 108 S.Ct. at 2100. The government argues that neither the state nor the federal prosecution satisfied the *Roberson* requirements to trigger Martinez's Sixth Amendment rights at the time of the federal agents' interrogation. The government relies on the fact that the state had dismissed its charges against Martinez months before he was interrogated by federal agents. With respect to Martinez's arrest on the federal charge, the government notes that the Sixth Amendment right "does not attach until a prosecution is commenced, that is, 'at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.' "

*McNeil,* 111 S.Ct. at 2207 (quoting *United States v. Gouveia,* 467 U.S. 180, 188, 104 S.Ct. 2292, 2297, 81 L.Ed.2d 146 (1984) (internal quotation omitted)); *see also United States v. Pace,* 833 F.2d 1307, 1312 (9th Cir.1987) ("We hold that Pace's sixth amendment right to counsel did not attach upon the filing of the complaint by the FBI, the issuance of the warrant of arrest, or Pace's arrest."), *cert. denied,* 486 U.S. 1011, 108 S.Ct. 1742, 100 L.Ed.2d 205 (1988). Thus, the government asserts, neither the dismissed state charges nor the arrest by federal authorities was sufficient to trigger Sixth Amendment protections. Simply stated, the government argues that, because there were no pending charges against Martinez, he was not "facing a state apparatus that ha[d] been geared up to prosecute him," *Roberson,* 486 U.S. at 685, 108 S.Ct. at 2100, and, therefore, he had no Sixth Amendment right to counsel.

Martinez presents two arguments for a considerably broader construction of the Sixth Amendment's protections. First, he contends that, despite the dismissal of the state charges, we should still focus on the conduct that the officers were investigating, not the specific charges that were brought. His position amounts to an argument that the doctrine of "inextricable intertwine[ment]," *Hines,* at 257, should be extended indefinitely in time. He argues that, once a defendant has been charged, he may not thereafter be interrogated about the subject matter of those charges unless his counsel is present.

We are reluctant, however, to extend that doctrine indefinitely into the future after the initial charge is dismissed. To do so would extend the prohibition on interrogation outside the presence of counsel to any investigation of a given set of acts, even if the second investigating unit had no connection to the first. It would require suppression of a statement given to federal authorities regarding a federal crime if, unbeknownst to the federal agents, the suspect had been charged for the same substantive act at some earlier time.[2] Such

---

2. Thus, implementation of this rule would mean that a federal agent could not question a suspect

without first determining that no state had

a broad prophylactic application of the Sixth Amendment runs counter to the reasoning of *Moulton* and *McNeil,* which stressed both the narrow application of the Sixth Amendment right to counsel and the importance of allowing police to initiate and pursue investigations.

 Martinez's second argument is that, even if there is no blanket prohibition on interrogations on the subject matter of previous charges, in this case the state and federal authorities cooperated so closely that Martinez was, in effect, subject to prosecution of a single offense by different sovereigns. Martinez suggests that the government's position—that the state prosecution was dismissed and the federal not yet begun—ignores reality and does not comport with the policies underlying the Sixth Amendment right to counsel. Essentially, he argues that the federal authorities took over where the state left off, creating a seamless web of both incarceration and prosecution.

*Hines* offers stronger support for Martinez's second argument insofar as it focuses on collusion. In *Hines,* the state had originally charged Hines with an offense committed in December 1988. While that charge was pending, federal authorities interrogated him, outside the presence of his counsel, concerning an offense committed in January 1989. The state then dismissed its charge. The federal government thereafter indicted Hines for both the December and January offenses. He moved to suppress the statements made to federal authorities regarding the January offense. We held that the two offenses were distinct and therefore not "inextricably intertwined." *Hines,* at 258. We also pointed out, however, that even without the necessary intertwining, Hines would be entitled to suppress his statements if "the government breached its 'affirmative obligation not to act in a manner that circumvents and thereby dilutes the protection afforded by the right to counsel.' " *Id.* (quoting *Moulton,* 474 U.S. at 171, 106 S.Ct. at 484). We found no such breach by the government because "there [was] no evidence that

charged the suspect with a crime arising out of

the state's dismissal of the January charges and the federal government's subsequent joinder of the same charges were the result of collusion between the authorities." *Id.*

*Hines* therefore suggests that collusion by the prosecutorial authorities to circumvent the right to counsel may cause Sixth Amendment protection to bridge the gap between separate and non-intertwined offenses. If Martinez is correct in asserting that the federal and state authorities worked together in shuffling his charge from the state to the federal system, then the situation is analogous to that in *Jackson* and Martinez's statements should be suppressed. When there is improper collusion, there is no danger that the second sovereign will unwittingly violate the Sixth Amendment by interrogating a suspect in ignorance that he or she was charged by another sovereign at some time in the past.

There are, moreover, sound reasons for permitting suppression in cases of collusion, as *Hines* suggests. If the dismissal of state charges or the initiation of federal interrogation was a mutual endeavor in anticipation of a federal prosecution, then, as a practical matter, Martinez's Sixth Amendment right not to be interviewed without his counsel was circumvented. He was prosecuted on a charge identical to that of the state, using a statement that the state could not have secured from him if it had proceeded with its prosecution. The key, of course, is the extent of coordination between the state and federal authorities.

 We have no record on that point. Because the district court granted the suppression motion without receiving any evidence concerning the level of the relevant state-federal cooperation, we cannot decide whether Martinez was entitled to an order suppressing his statement. We therefore vacate the district court's order and remand for further fact-finding. In the absence of such a record, we do not rule on the precise acts of cooperative conduct that might amount to collusion to circumvent

the same act(s).

Martinez's Sixth Amendment rights. Areas appropriate for factual inquiry include the degree of federal participation, if any, in the state's decision to dismiss its charges; the degree of state participation, if any, in the decision of federal officers to interrogate and charge Martinez; and the degree of joint decisionmaking over the forum in which Martinez should be prosecuted. This list is not exhaustive; other areas of inquiry may well suggest themselves to the experienced district judge.

The order of the district court granting the motion to suppress is vacated, and the cause is remanded to the district court for further appropriate proceedings.

VACATED AND REMANDED.

D.W. NELSON, Circuit Judge, dissenting:

Jose Flores Martinez was arrested by state authorities on March 11, 1990, and was charged with being a felon in possession of a firearm. Although Martinez does not speak English, he managed to request counsel at his arraignment in state court. Martinez was never provided with counsel, however. Instead, he remained in jail on the state charge. Even though that charge was dropped in April 1990, Martinez remained in state custody until September 6 because his possession of a firearm violated a condition of his parole. On September 6, the day Martinez was scheduled to be released from jail on the parole violation, he was instead handed over directly to federal officers, who charged him with the same crime—being a felon in possession of a firearm—on the basis of the same arrest. Martinez was interrogated by those officers while in federal custody, and he confessed.

The district court suppressed the confession, holding that "once he's requested a lawyer, the fact that he did not get one *after* he requested it and spent that long a time in jail before he was then turned over to the federal authorities precludes the use of a confession." The majority reverses the district court.

In *Michigan v. Jackson*, 475 U.S. 625, 636, 106 S.Ct. 1404, 1411, 89 L.Ed.2d 631 (1986), the Supreme Court held that a defendant's invocation of his Sixth Amendment right to counsel precludes further attempts to question the defendant about the same offense. In *McNeil v. Wisconsin*, 111 S.Ct. 2204, 2207, 115 L.Ed.2d 158 (1991), however, the Court cautioned that invocation of Sixth Amendment rights regarding one offense did not preclude the government from questioning the defendant about an unrelated offense.

In a recent decision interpreting these two cases, we held that *Jackson* controls—and the confession must be suppressed—"when the pending charge is so inextricably intertwined with the charge under investigation that the right to counsel for the pending charge cannot constitutionally be isolated from the right to counsel for the uncharged offense." *United States v. Hines*, 963 F.2d 255, 257 (9th Cir.1992). The majority and I are in agreement that the charges in this case were "inextricably intertwined." The majority concludes, however, that *Hines* cannot apply in this case because the state charges were dismissed before Martinez was questioned by federal officials. Although I share the majority's reluctance to extend the protections of *Jackson* "indefinitely into the future after the initial charge is dismissed," I have no problem applying *Jackson* and *Hines* in the circumstances of this case.

Although Martinez requested an attorney to help him defend against the charge, one was never provided. When the state charges against him were dropped, Martinez was not released from jail. Instead, Martinez was transferred directly from state custody into federal custody. Indeed, he was held in custody for the weapons charge continuously from the time of his arrest through the time he was questioned by federal officials. The alleged federal crime for which he was questioned was the same crime for which he had been arrested and for which he had been held in jail for six months.

From Martinez' perspective, then, he was arrested, requested but never received counsel, was held in jail for several months, and then was questioned about the crime.

It is unreasonable to expect Martinez, who does not speak English and who—in spite of his request—has been denied the assistance of counsel, to understand that he is now facing a different (albeit "inextricably intertwined") prosecution by a different sovereign, and that he must reiterate his request for counsel or he will forfeit it. Because of this, and because Martinez was in continuous custody for the weapons violation from the time of his arrest through his questioning by federal officials, I agree with the district court that his confession must be suppressed under *Jackson*. I therefore dissent.