9 F.3d 110
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Anthony A. BRAY, Defendant-Appellant.
 No. 92-6218.
 United States Court of Appeals, Sixth Circuit.
 Aug. 31, 1993.
 
 Before GUY and NELSON, Circuit Judges, and HOOD, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant entered a conditional plea of guilty to various drug and firearms charges, specifically reserving the right to appeal the district court's denial of his motion to suppress certain statements he made. After considering defendant's arguments on appeal and reviewing the record in this case, we affirm.
 
 I.
 
 2
 This case stems from the same set of facts recounted in the appeal of co-defendants McWhorter, Kidd, and Gober decided today as well. United States v. McWhorter, No. 92-6217 (6th Cir. Aug. __, 1993). Familiarity with those facts is presumed. Only the facts relevant to Bray's motion to suppress are summarized below.
 
 
 3
 On August 9, 1991, Bray, Kidd, and McWhorter were arrested in Springfield, Ohio, on charges of aggravated drug trafficking. McWhorter was able to make bail, but Kidd and Bray remained incarcerated. At the time of this arrest, Bray was on parole for an earlier drug trafficking conviction. On August 10, Bray told the jailor that he wished to speak with an agent of the "task force." (App. 244). Officer Eggers of the Springfield Police Department then met with Bray, read him his Miranda rights, and Bray then signed a waiver of those rights. Bray told Officer Eggers that the drugs found by the Ohio police were not his or Kidd's but belonged to McWhorter, and that he was willing to cooperate in exchange for leniency. Eggers told Bray there was nothing he could do about the parole violation charge, but that he could look into the current Ohio drug charges.
 
 
 4
 Bray then gave Eggers a list of drug dealers in Springfield. During this same meeting, Bray informed Officer Eggers that he, Kidd, McWhorter, and "Charlie Brown" had plans to go to Clarksville, Tennessee, in late August for the purpose of selling drugs. Bray told Eggers the specifics of that planned trip. Although he had been arrested, Bray thought the trip would go ahead as planned.
 
 
 5
 On August 12, Bray submitted an affidavit of indigency, stating that he could not afford to hire an attorney. Counsel was later appointed.[1] On August 15, Officer Eggers returned to Bray and informed him that the prosecutor did not believe him. Bray testified that he thought Officer Eggers also did not believe him. There is no evidence that Bray was again informed of his Miranda rights at this meeting or that a second waiver was obtained. In an attempt to provide support for the information concerning the upcoming trip to Clarksville and thereby assure himself of a "break," Bray told Officer Eggers why he knew the details of the trip. Bray told Officer Eggers that the trip to Clarksville had been done once before, in late July, and that they had used the same mode of operation. In making these statements, Bray confessed to participating in the possession and distribution of crack cocaine and also to the possession of a firearm during that offense.
 
 
 6
 Bray cooperated with police and testified at the grand jury hearing on the Ohio charges against Kidd and McWhorter. The Ohio charges against Bray were then dismissed. Sometime thereafter the indictment in the present case was handed down, charging Bray with conspiracy to distribute cocaine in the Middle District of Tennessee on or about July 25 and August 23, 1991; possession with intent to distribute cocaine between July 27 and July 31; and unlawful use of a firearm during and in relation to a drug trafficking crime between July 27 and July 31.
 
 
 7
 Bray moved to suppress the statements he made to Officer Eggers on the grounds that they were obtained in violation of his Fifth and Sixth Amendments rights. The district court denied Bray's motion to suppress, finding that Bray voluntarily initiated the conversation with Officer Eggers and that the affidavit of indigency was not a blanket request for an attorney. After the suppression motion was denied, Bray pled guilty, reserving the right to appeal the denial of his motion to suppress.
 
 II.
 
 8
 This court applies a de novo standard of review to the district court's legal conclusions and a clearly erroneous standard to the district court's factual findings. United States v. Sangineto-Miranda, 859 F.2d 1501, 1512 (6th Cir.1988). A determination of the voluntariness of a defendant's confession must be viewed in the totality of the circumstances surrounding the confession. Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973).
 
 
 9
 Bray argues that use of his statements would violate Miranda v. Arizona, 384 U.S. 436 (1966). He argues that when he made the statements to Officer Eggers on August 15, he had not knowingly, voluntarily, and intelligently waived his Miranda rights and therefore the statements he made implicating himself in the Clarksville conspiracy should have been suppressed. It is not disputed that Bray was the one who initiated contact with Officer Eggers on August 10. It also is not disputed that Eggers read Bray his Miranda rights and Bray signed a waiver form. Under these circumstances, we find that defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. The fact that on August 15 Officer Eggers came to Bray as opposed to Bray requesting to speak to him does not automatically make the statements involuntary. Both interviews arose out of Bray's desire to speak with the police in the hope of receiving lenient treatment on the Ohio charges. See Leviston v. Black, 843 F.2d 302 (8th Cir.), cert. denied, 488 U.S. 865 (1988).
 
 
 10
 Bray asserts that, because Officer Eggers failed to again read him his Miranda rights and obtain another signed waiver, the statements he made during the August 15 meeting must be suppressed. The failure to advise the accused of his rights is a factor to be considered in evaluating the voluntariness of a suspect's statements; it is not in and of itself determinative. Bustamonte, 412 U.S. at 227. If the totality of the circumstances surrounding the interrogation shows the defendant voluntarily and knowingly waived his Miranda rights, the statements are admissible. Bray had been read his Miranda rights at the meeting on August 10 and had signed a waiver. The waiver specifically stated:
 
 WARNING
 
 11
 (a) Before you are asked any questions you must understand your rights.
 
 
 12
 (b) You have a right to remain silent.
 
 
 13
 (c) Anything you say can be used against you in court.
 
 
 14
 (d) You have the right to talk to a lawyer for advice before we ask you any questions, and to have him with you during questioning.
 
 
 15
 (e) If you cannot afford to hire a lawyer, one will be appointed for you before any questioning, if you wish.
 
 
 16
 (f) If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.
 
 
 17
 (App. 333). In addition, his familiarity with the legal system stemming from his prior conviction was admitted by Bray and recognized by the district court. On August 15, Officer Eggers approached Bray to discuss the same topic they had discussed on August 10--the upcoming trip to Clarksville. We conclude, as did the district court, Bray was aware that at any time during the interview on August 15 he could have requested an attorney or refused to answer any questions. Bray's statements on August 15 did not violate his Miranda rights.
 
 
 18
 Bray next argues that by filing the affidavit of indigency he was making a formal request for the appointment of counsel and thus any statements made by him after that request violated his Sixth Amendment right to counsel. Bray relies principally upon Michigan v. Jackson, 475 U.S. 625 (1986), where the Supreme Court held that a request for counsel at an arraignment constituted a request for counsel at all critical stages of the prosecution, including subsequent interrogation. The government points to McNeil v. Wisconsin, 111 S.Ct. 2204 (1991), where the Court held that the Sixth Amendment right to counsel is offense-specific and cannot be invoked once for all future prosecutions. We agree with the government that McNeil controls this case.
 
 
 19
 In McNeil, the defendant had been arrested on a charge of armed robbery in West Allis, Wisconsin. At a hearing to set bail and schedule a preliminary examination, counsel represented the defendant. After that hearing, a detective came to speak to the defendant concerning a murder and burglary in Caledonia. The defendant was advised of his Miranda rights and signed a waiver form. During this interview, the defendant did not deny knowledge of the crime, but said he had not been involved. However, in subsequent interviews the defendant did incriminate himself and eventually confessed to the crime. Defendant sought to suppress his statements based on his invocation of his right to counsel at the hearing on the West Allis crime.
 
 
 20
 The Supreme Court first analyzed defendant's claim under the Sixth Amendment and concluded that the Sixth Amendment right to counsel is an offense-specific right. Id. at 2207. The Court therefore concluded that the rule of Michigan v. Jackson is also offense-specific.
 
 
 21
 The police have an interest ... in investigating new or additional crimes [after an individual is formally charged with one crime.] ... [T]o exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel had not attached at the time the evidence was obtained, simply because other charges were pending at the time, would unnecessarily frustrate the public's interest in the investigation of criminal activities....
 
 
 22
 McNeil, 111 S.Ct. at 2207-08 (quoting Maine v. Moulton, 474 U.S. 159, 179-80 (1985)). The Court held McNeil's request for counsel on the West Allis offense did not bar the admission of his confession to the murder. In the present case, the statements Bray made after submitting the affidavit of indigency were not statements about the Ohio drug charges, but were statements about a conspiracy to distribute cocaine in Tennessee. Thus, the invocation of his Sixth Amendment right to counsel for the Ohio charges does not bar the admission of his subsequent statements concerning crimes committed in Tennessee.
 
 
 23
 Bray argues that the charges in Tennessee were not "different offenses" from the Ohio charges for which he had invoked his Sixth Amendment right to counsel. The Tennessee charges were for various federal crimes allegedly committed in the Middle District of Tennessee. These charged offenses were different offenses than the alleged drug trafficking in Ohio and arose out of a different set of facts. Just because the alleged Ohio offense occurred within the time frame of the alleged conspiracy in Tennessee does not mean they are the same offense. Cf. United States v. Martinez, 972 F.2d 1100, 1103-04 (9th Cir.1992) (state charges of possession of a firearm by a convicted felon and federal charges of possession of a firearm by a convicted felon were "inextricably intertwined" because they involved the same conduct). Defendant also argues that, because he undertook to speak with Officer Eggers in an effort to receive lenient treatment on the Ohio charges, the conversations were about the Ohio charges, and thus his invocation of this right to counsel at the hearing would bar use of his statements. We decline to adopt this reasoning because to do so would create an exception that would swallow the rule announced in McNeil. Many incarcerated suspects will speak with authorities in an effort to receive favorable treatment on the offense for which they are being held. This does not convert all conversations into discussions about the current charged offense.
 
 
 24
 Bray also argues that his statements on August 15 were made in violation of his right to counsel under Miranda. The Supreme Court in McNeil also analyzed defendant's claim under the Fifth Amendment and Miranda. In Miranda, the Court "established a number of prophylactic rights designed to counteract the 'inherently compelling pressures' of custodial interrogation, including the right to have counsel present." McNeil, 111 S.Ct. at 2208. In McNeil, the Court noted that pursuant to its decision in Edwards v. Arizona, 451 U.S. 477 (1981), once a suspect asserts the right to have counsel present during custodial interrogation, the current interrogation must cease and the suspect "may not be approached for further interrogation 'until counsel has been made available to him....' " McNeil, 111 S.Ct. at 2208 (quoting Edwards, 451 U.S. at 484-85). The Court made clear that the Edwards rule "is not offense-specific: once a suspect invokes the Miranda right to counsel for interrogation regarding one offense, he may not be reapproached regarding any offense unless counsel is present." Id.
 
 
 25
 In McNeil, the defendant tried to combine the two rights to counsel. McNeil argued that his invocation of his Sixth Amendment right to counsel at the hearing on the West Allis charge invoked his Miranda right to counsel. After discussing the policies behind the Sixth Amendment right to counsel and the policies behind the Miranda right to counsel, the Court held that the invocation of the Miranda right to counsel "requires, at a minimum, some statement that can reasonably be construed to be expression of a desire for the assistance of an attorney in dealing with custodial interrogation by the police. Requesting the assistance of an attorney at a bail hearing does not bear that construction." Id. at 2209.
 
 
 26
 In the present case, McNeil dictates that Bray's submission of an affidavit of indigency in proceedings concerning the Ohio charges does not constitute an expression of a desire for assistance of an attorney in dealing with custodial interrogation by the police on unrelated matters. It is not helpful to Bray that he initiated the conversation on the unrelated prior criminal episode rather than having it result initially from police interrogation.
 
 
 27
 AFFIRMED.
 
 
 
 *
 Honorable Joseph M. Hood, United States District Court for the Eastern District of Kentucky, sitting by designation
 
 
 [1]
 An attorney from the public defender's office originally was appointed to represent both Bray and McWhorter. Due to the obvious conflict, substitute counsel was appointed for Bray on August 23